May it please the court. Felicia Jones on behalf of the appellant Roderick Colvin. Mr. Colvin was sentenced to 180 months pursuant to a enhancement under the Armed Career Criminal Act. At the March 10, 2009 sentencing he had five residual clause prior convictions. The residual clause of course has been voided for Mr. Colvin filed a 2255 claim challenging the remaining prior convictions. The government said he had exactly three left, an assault, a resisting, and exhibiting. Counsel how do we know that he has that they were based on the residual clause here? Back then when Mr. Colvin was exhibiting was based on Jackson Pulliam didn't exist and so that those cases the Jackson case which was in place on exhibiting when he was sentenced cited Parkhurst and Parkhurst says that it's a residual clause it was based on the residual clause. And that's in the sentencing transcript is that? That's in the actual holding the opinion. Okay. So that was before Pulliam and likewise I'll make exhibiting first. Yes it was a circuit court. It was a an appeal. Yes. And so Pulliam wasn't in place when Mr. Colvin was sentenced so the court had to rely on those precedents. And so we argue that the exhibiting and resisting offenses were charged in the same indictment they were the same course of each other and they stemmed the resisting arrest stemmed from the exhibiting charge as well. Of course notwithstanding the decisions in Swopes and some of the other cases in this district the exhibiting needs to be reconsidered on bank because neither Swopes nor Hudson nor Pulliam addressed the Missouri case law prior to 2009 and it failed to take into consideration cases like Gein where the exhibiting element of displaying a weapon in an angry and threatening manner in front of others can be satisfied by people who aren't targeted who aren't even in the presence of the gun who don't even see the gun and it's not targeted force aimed at a person. The others present requirement can be satisfied by someone who the defendant isn't angry at just holding a gun angrily. Counselor your reply brief did not address the question of whether the panel decision in Swopes on remand from the and bank decision is controlling on this panel. The Swopes decision it is in place I recognize that but once again Swopes neither Swopes nor Pulliam addresses how the categorical isn't controlling on this panel under our under our in bank decision in Maidor. Yes yes your honor. All right so don't make it in this isn't the in bank court. Yeah I if you have a reason why why we should we can distinguish Swopes which frankly I don't see that's fine but otherwise our hands are you know we're cuffed. Sure I as I as we've argued as our offices argued the math is says that you have to look at the categorical approach consider how the state implements the statute and in this particular case in exhibiting you can it does not meet the force requirement it just does not. Holding a weapon in an angry manner does not mean targeted force against another as all the cases that are enumerated in the enumerated cost in other cases they have to have that targeted element. You know our in bank court has been unsympathetic frankly to this argument. I agree. So making it to this panel is too low. On the other hand we asked you to argue and that's what you're doing. Well there's also the let's talk about the resisting. That's the one I'm interested in that's the one that where we where we don't have circuit precedent on it So before Johnson of course resisting was a residual cost case and it's there's been cases like the Hollis case which was of course in this circuit and it said we need to examine the conduct we need not examine the conduct for the elements of cause because this case meaning the resisting presents a serious risk of Once again resisting does not require the violent force because Missouri case law says it can be satisfied by standing still by not doing something by being passive. Well it doesn't I don't know if it's standing still. The Missouri cases and they're all Missouri court of appeals case and there's a lot of them say that you have to stiffen or take some sort of action but that is not force. I mean merely stiffening yourself is not taking force against against anyone and so But I don't know if it's quite just standing still. I sometimes think of a protester dropping maybe moving not you know falling to the ground not you know it's passivity does can involve some passivity and so the nonviolent force such as in Belton which is a Missouri case it said that it can be nonviolent force it specifically says that in Belton holding still but that makes the officer have to exert His or her strength that's not violent force targeted at another judge Webber is relied on Shockley in his district court opinion but Shockley there was no consideration of state case law the actual ruling on the record said it fails to show whether or not it was based on fly or physical force so Shockley I think was a little I'm gonna have a conversation with opposing counsel was different because That passage and Shockley was making a comparison between flight, which is clearly not violent force under our precedent and the other two, which I can understand the mistake look like violent force. Under under ACTA because he uses the same language, but again, no consideration of the cases. Yes, how should we read the tea leaves in the Supreme Court opinions. How do I read the tea leaves, how they might look In other words, has Johnson's force been more and more ebbing away. I mean there's still some element I think it's it's there's the Stokeland case which talked about robbery, which is completely different and not like resisting because there's a targeted person you have to actively do something you have to go to rob somebody there's a victim and you have to touch them or do something to them so it's not applicable. But they are still requiring some force, even if it's like but they're requiring that the defendant do something to put somebody to actually physically do something to them. The level of force that's required is debatable but resisting is different because the person the defendant is not actively seeking doesn't have to it's indivisible statute doesn't have to physically go and attack somebody they can just be passive. And that's a seven circuit case Bennett that says you can just hold still and commit this offense. Back to the question of what clause or portion was relied on, does our Walker case have any bearing on your case? In the sense that as to whether or not resisting. What was the legal landscape like at the time of sentencing of your client? Sure, the residual clause was in full effect, Mr. Colvin was sentenced back in 2009 before Pulliam, before Johnson, before anything such as math is telling them to look at the elements, the least egregious way in which it can be committed. And so resisting does need to be reviewed because it's clear looking at the instructions, looking at how it's been implemented by Missouri courts that passive nonviolent force holding still. But here's the problem, you know, Judge Wallman's keying in on it, which is we have Walker, but then we have Golvenow or Golvenow, which is the next case where we actually extend the second or successive analysis to a non-successive petition where we place it on the defendant, the burden on the defendant to show by a preponderance of the evidence that it was a residual clause case. And I understand that there was some citation of some residual clause cases, but my understanding of the district court's original decision in this case, it also included an unpublished decision on the fourth clause. And so we actually have a little bit of a conflict in the record as to what the district court actually relied on. So why not send it back and have the district court try again? I agree. That's we are seeking relief and we would ask the court to do that. And I am almost out of my time. Thank you. May it please the court. My name is Tiffany Becker. I represent the United States in this matter. And we would ask this court to affirm Judge Weber's ruling that the 2255 was without merit and affirm the denial of the expansion of the certificate of appeal ability. I think Judge Loken hit the nail on the head with respect to the exhibiting prior. That issue was decided on a panel Judge Strauss was on just two days ago. So this panel is bound by those prior decisions. I don't think there is anything in the record that would warrant revisiting that. Colvin argues numerous times that this court has failed to wrestle with state precedent. That's simply not the case. If the court would examine the underlying. This cut me to the quick. I don't think they have much respect for my Pulliam case. Once over lightly, didn't really come to grips with anything. All of which may be true. Judge, exactly right. In 2009, you had the Pulliam case. And if this court carefully. We were pre, pre Johnson. So we can take refuge of the ignorance. We were blissfully ignorant of what might come down the road. I would say you foresaw the force issue and got it right. And in terms of those state court cases. Take a look at the briefing and all of the underlying cases. Stephen Hudson, Ahmaud Hudson, Holt, all of them. These state cases were thoroughly briefed ad nauseum during that. And this court had the benefit of that when it made its decision. So there's simply no reason to disturb that press council before you. Before you get onto the other the other crime here. Are you relying on the statute when your statute of limitations is that. Because I'm trying to figure out why you briefed the statutory question. Because on an initial habeas, the statutory, whether it's statutory or constitutional, makes no difference. Is it the second or success of where it makes a difference? I understand that judge. And I think we are in a very important procedural posture. And I want to give some kind of context to where we are. I think that's an excellent question. And in 2253 C2, the AEDPA has an extremely limited jurisdictional hook. Especially on appeals from 2255s. And if the court looks carefully at 2253 C2. Are you are you applying the state habeas statute to 2255? I think it governs the expansion of our certificate of appealability. Not facial, but all but the courts, the couple of circuit courts that have looked at the question have said yes, as I pointed out. And Wynarski, right. And but that's not clear at all. That's certainly a live question for the in-bank court. I would submit under Wynarski, it's not a live question for this panel. I think it does require a substantial constitutional showing, which is absent here. But that's because state habeas requires constitution. It's obvious in your writing 2244 for state habeas. You're going to limit it to the constitutional bedrock or universe of cases for which a state inmate can get federal habeas relief. Now, you come to 2255 and you begin with a statute which with a which has a much broader base, jurisdictional base. And yet you sort of say in so many words, just go ahead and apply to in looking at the limitations, go ahead and apply what you do for state habeas. And so logically, although I doubt Congress thought about it, logically, you superimpose the constitutional limitation on 2255, which would not be there if you were looking at a 2255 jurisprudence by itself. But we are in the instance where the district court specifically denied a certificate of appealability on this issue. And it's this court's decision whether or not to grant that. Now, the district courts have no plenary authority on certificates of appealability. We love their help, but it's our job under the statute. And absolutely it is your job to. So what you're arguing, but you want us to assume that or infer the contrary, that the district judges were delighted not to have to bother with certificates of appealability when the statute was first written. And we said, please help. And they do. But the ultimate question is still for us. And that's true. So let's dive into whether. Well, and even before you leave that, I mean, I'm still not completely getting what you're doing, because 2255A, and I think Judge Locke is getting at this, allows you to bring a motion that is imposed, and I quote, in violation of the Constitution or laws of the United States. So the jurisdiction is broader. So whether it's a statutory or constitutional claim, I don't think makes any difference, at least for the initial motion. And that in terms of the timing of this, and I think that's why we need to examine the procedural history and see where things were evolving and when things could have been raised and weren't. So the defendant was initially sentenced in 2008 to a larger sentence. And then I'm sorry, 2009. Then Curtis Johnson, the force clause case comes out in the interim. Thereafter, his sentence is reduced. And during that time, the defendant never said some of my priors don't qualify under this new, more vigorous force requirement. There was no there was no objection, no appeal. And it's important to look at the PSR. And I would urge the court to look at at paragraph 24, which sets forth eight, not three, but eight predicate violent felonies all separately indicated. And it and the defendant never objected to those being separate occasions or different from one another. They never objected based on force, based on enumerated. Now, I understand the residual clause was still in effect at the time. However, the record is silent on that. But doesn't that lead inevitably to the conclusion that the correct procedure is the one identified by Judge Wollman, which is the Golvino Walker procedure, which is because this wasn't an issue at the time. We don't know why the district court did what it did. It did. It did. And Judge Benton's opinion in Golvino is pretty clear that when we are not sure, we send it back to the district court. We say district court, look at the sentencing transcript. You figure out was the force clause, was it the residual clause, et cetera. So wouldn't that be the appropriate thing to do here? I think we don't need to do that here, because I think looking at the statute, we can we can discern that. And I think it's important to look at the. But how do we discern it, though, if you're telling me that nobody objected to it? Nobody really talked about the basis for it. That is precisely the situation contemplated by Judge Benton's opinion. Exactly. But we're in a wholly different procedural posture. If you let it. Sure. In terms of the 2255 gets filed after the Johnson Samuel Johnson case, and it is not raised in the initial petition. They don't challenge resisting arrest. And I would urge the court to look at that strongly there. They challenge escape. They challenge burglary. They challenge the exhibiting. They challenge six of the eight. They do not challenge the assault second. And they do not challenge the resisting arrest in that opening brief. It is not until the reply brief eight years after the sentencing in this case that we for the very first time in a reply brief see this claim raised. So at that stage, that's a significant procedural difference between this and the recent case to which Judge Strauss was referring. Yeah. But the district court addressed both both crimes in its order. So it it went ahead. And in this particular case, address both the resisting arrest and the brandishing or showing a weapon. And so, I mean, aren't we kind of stuck with that? That it's that it's properly raised here. Do we go back and say, no, it wasn't properly raised? Well, it certainly should go into this court's calculus on deciding whether to expand the certificate of appeal ability. Well, on the resisting arrest, just to just to get to the merits, I I'm having a lot of trouble now. You might be right that procedurally it's not before us. But when I look at that Missouri case law, they very unnaturally read what violent force means. I mean, they talk about stiffening, which doesn't even require touching anyone else. I presume it would also cover somebody who goes limp and does and doesn't and doesn't allow somebody to allow them to take them. But at the very least, it doesn't require any force against anyone else. Let's take a look at the statute using or threatening the use of physical force. And in that Belton case to which you're referring, they analyze this, obviously, the physical force, the threatening of all of that. And I think what's unique here is first the court needs to look at the Myers case. And that case cites Lamb. And it's where Mathis, with this stringent means elements, it applies to the enumerated clause. They make the point of saying it doesn't apply to the force clause. The force clause here we have, whether the elements involve the use or threatened use or attempted use of force. That means versus elements doesn't apply. Once we decide this statute is divisible, which I think is contested here, the court can look at the Shepard documents. And the Shepard documents here show that the prong of which the defendant was convicted was of hitting and kicking Officer Bono and Detective Shannon. Clear as day, that is not stiffening. I agree. But that's that's using the facts. We can't use the facts, can we? But I think you can when you apply the modified categorical approach to determine what portion of the statute. I agree with that. I agree. So I think that's where we are. And I think the Mathis stringency with respect to the means elements analysis only applies to the enumerated clause, as this court found in Myers. And that case cites Lamb, where there was preexisting precedent where before pre Mathis precedent that something met the force clause definition and then post Mathis, they said that's still valid because this intricate means versus elements. Just to be clear, are you saying that I agree it's divisible between one and two in the resisting arrest statute? But are you saying that it's divisible between threatening the use of violence and threatening the use of physical force, which is all part of one single clause? Is that what you're arguing? I think it can be in terms of because it falls under the force clause. I don't think the stringent means elements. How could that possibly be? That's the same phrase. I mean, you can't you can't. I mean, textually, that doesn't work. You can't divide the same clause. I mean, essentially, they're saying there's you've got you've got and then you've got fleeing such officer that just doesn't seem to fit textually. Well, fleeing, of course, the government concedes is not a violent felony. And in terms of if now we would purport that that phrase would could be divisible in a force clause analysis where we have Shepard documents that show which you have another problem, though, because the charging document says and even if you're right, that it's divisible. And I highly doubt that the charging document actually says violence or physical force, which means that the state court who convicted him didn't even treat it as divisible. I don't understand why divisibility matters. I mean, you read you read you read the Taylor and then you read Shepard. Nobody's talking about subsections and divisibility and so forth. And those are enumerated. You're talking about whether an overly broad statute is is nonetheless properly applied in this case. And you go to the judicial documents. You're not worried. You're not worried about what subsection of the offense there is. And so looking at this, I think isn't that right? Well, I think we do have to look at the word divisibility doesn't show up till they can. Correct. In 2013, and it has nothing to do with whether whether, you know, a burglary, a burglary conviction was the burglary of a car versus a home. I think it goes to defining how we look at these crimes and classify them. But I would point even if that is not divisible, even if it's one thing, I don't think that kicks it out of the use of force clause. And here's why. How could that be? I mean, I'm going to challenge you on that because you've got the two or three Missouri cases that use that defined physical force that can't possibly rewrite. The physical force is defined as sufficient to overcome resistance, which is the hallmark of sufficient force, as we see in Stokely, as we see in this court's en banc opinion. I agree with you, which is why I start out my questioning with you, that they define it unnaturally. I mean, they would define it. They apply it unnaturally. Right. Because you agree that stiffening without any contact, just merely like because one of the cases was they were trying to take him out of a vehicle and he stiffened and they said that was the use of physical force and was resisting arrest. I understand that. And that was when that car was moving. However, I would point the court to Judge Wolman's decision in Hollis, where it requires more than just going passive, more than just going limp. Judge Wolman took a look at this statute a while back. I think it was 2006 and said it's more than that. And I think when you put the circumstances of an individual who's under arrest by law enforcement officers, that circumstance makes that stiffening a threatened use of force that this court is willing to recognize as meeting the force clause. The problem with Hollis, though, is that Hollis was a residual clause case, wasn't it? It was. So that one just falls away under Johnson. I don't know that we can reject the the interpretation of Missouri law that it takes more than just going lax. Stiffening in that kind of environment can't is forced because the law enforcement officers are due. And I think you need to take into account the idea that this is the scene of an arrest where law enforcement officials are taking someone into custody. So by going stiff, that can be forced. One more question, if you don't mind. But the stiffening, the problem is, is the Supreme Court just had another case last week or the week before they got a ton of these cases where they they said it has to cause physical injury, likely to cause physical injury to another person. I don't know how stiffening by itself can cause physical injury to another person. It's certainly not hitting the officer. It's not. I mean, it just seems to me that's a pretty big stretch. It's it's the threat in an arrest. Correct. The threatened and the threat to those officers in the in doing their duty. And for all these reasons, your honors, we'd ask that the court affirm Judge Weber's ruling and decline to exercise this or to expand the certificate of appeal ability. Thank you. Ms. Jones. Yes, your honor, Judge Weber addressed it. The government joined the resisting to our challenges and Judge Weber addressed it as such. And so it is part and parcel of the same thing. And I think it warrants appealability because the relief is a constitutional issue. I mean, and because reasonable jurors could differ from one another, I think it meets the criteria for a certificate of appeal ability. What about the fact that it wasn't raised in the Supreme Court? Until the reply brief. What was it, eight years later? Should that factor into our analysis or do you just disagree with that factual predicate? I disagree with that factually. I think we need to raise the twenty to fifty five. You know, we were filing a lot of Johnson's and we we raise it as we were interpreting as it went down. And so I think it's part and parcel and decisions that have come forth have even reinforced that question. It is clearly a residual clause issue and that it is subject to appealability. As we said, the petitioner traversed the government's contention and argued that the resisting occurred on the same occasion and also that the Missouri law prohibiting exhibiting doesn't qualify as a violent offense. One thing I want to talk about is the resisting in terms of an officer. Violent force has to be against another person. An active. Act towards another person, even if you're talking about different levels, but it may not be a police officer just doing anything disobeying is resisting and that's not violence. Talking about about whether just stiffening is a violent act against another or refusing to. It often happens you're taken down and you refuse to put your hands where they can be. They can be controlled and cuffed. That is correct. And that is. And is that a threat to the officer? And it is not a violent use of force or threat. It is merely disobeying somebody. The interesting take a referendum among the police. Why? Sure. I mean, one, I think they would say that depending on the person, obviously, and the context. But if it's a if it's a a context in which violence would not be surprising. Then that is likely to be the hint that that violence may be may be coming. Now, is is that enough? Well, and looking at the element of jury question in the state case. That's correct. And that's fact finding. We're getting into fact finding. It's not really permissible under the categorical approach because it can be committed. You're asking us to do to do to do 20 to 20 years ago. Hindsight on appellate opinions written often not focusing on what? Seems to be relevant under ACCA precedents. Sure. One thing which I know is can be insightful is looking at the jury instructions and and and the instruction for resisting is not under violence against others or threats against persons. It's about a public safety. It's about risk. It's under the residual clause. So it's not targeting. It's not like robbery. It's not in that category. It's a public safety. If officers want somebody to comply, they request it. The person can refuse, but they can. It's why they call it nonviolent protest. It's one question I had is it seems to me and it's kind of unfair to bring this up on rebuttal. But do the parties cite the wrong version of the statute throughout the proceedings? I mean, that's the other thing. I think it's there's a particular version and the version had changed. And and the version that the parties are arguing about might be different than the version that was in effect. I think it was in 1995. That's what I thought. Yeah. And I think I thought we cited correctly, but it is. That's what was in place during Mr. Colvin's conviction. And so maybe it's the government that cites the wrong statute, which was a little confusing. Apologies. I didn't ask you that during the during yours. That would have been the fair thing to do. What's your position about a possible remand? Yes, your honor. I would. We would ask that we would ask for resentencing and remand. And we could argue from our standpoint, whether Walker Galvano applies. And in other words, you'd be willing to settle for a half a loaf rather than take a chance on a straight up affirming. Well, I shouldn't. No, I would ask the court to consider resentencing, sending it back for first. Oh, I don't know. Well, for reconsideration, reconsideration. Yeah, I think the correct thing from Galvano is not the resentencing. I think it's we sent it back down to get sort of clarification type of thing. I don't know what the exact words are. And your view would be there's no need for classification because it's so crystal clear that your client was entitled to release on the basis of the record before us. If the court is requesting further clarification, we would be happy with that as well. Either or. That's a tough. I think I have finished. Thank you. Thank you, counsel. Argument has been helpful and you are well prepared and contributed considerably. So we'll take it under advisement.